Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Kimberly Russell*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

|  |  |
|---|---|
| Kimberly Russell,<br><br>                    Plaintiff,<br><br>          v.<br><br>Life Insurance Company of North America;<br>Masco Corporation; Masco Corporation<br>Disability Plan,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Kimberly Russell (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

-1-

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of

2  the United States.

3  *Parties*

4  2.      At all times relevant to this action, Plaintiff was a resident of Maricopa

5  County, Arizona.

6  3.      Upon information and belief, Defendant Masco Corporation (hereinafter

7  referred to as the "Company") sponsored, administered and purchased a group long-term

8  disability insurance policy which was fully insured by Life Insurance Company of North

9  America (hereinafter referred to as "LINA").   The specific LINA group long-term

10 disability policy is known as Group Policy No.: LK-980204 (hereinafter referred to as the

11 "Policy").  The Company's purpose in sponsoring, administering and purchasing the Policy

12 was to provide long-term disability insurance for its employees.

13 4.      Upon information and belief, the Policy was included in and part of an

14 employee benefit plan, specifically named the Masco Corporation Disability Plan

15 (hereinafter referred to as the "Plan") which was created to provide the Company's

16 employees with welfare benefits.  At all times relevant hereto, the Plan constituted an

17 "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

18 5.      Upon information and belief, LINA functioned as the claim administrator of

19 the Policy.  However, pursuant to the relevant ERISA regulation, the Company and/or the

20 Plan may not have made a proper delegation or properly vested fiduciary authority or power

21 for claim administration in LINA.

22 6.      LINA operated under a financial conflict of interest in evaluating Plaintiff's

23 long-term disability claim due to the fact that it operated in dual roles as the decision maker

24 with regard to whether Plaintiff was disabled, as well as the payor of benefits.

25

26

7.     LINA's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of her disability benefits.

8.     The Company, LINA and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### Venue

9.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### Nature of the Complaint

10.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Regular Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to from the Plan, any other Company Plan and/or the Company as a result of being found disabled in this action.

11.     Plaintiff also seeks a determination in this action that she is disabled and meets the "Any Occupation" definition of disability set forth in the Plan and/or Policy as the evidence she submitted to LINA supports a determination by the Court that she meets the Plan and/or Policy's "Any Occupation" definition of disability, such that she is also entitled to these benefits.  Plaintiff believes this issue is ripe before the Court since the "Regular Occupation" timeframe in the Plan and/or Policy will have expired at the time of briefing this matter, on or about September 14, 2017, and the relevant definition of disability at the time the Court decides the case will be the "Any Occupation" definition.

12.     After working for the Company as a loyal employee in the position of an Operations Support Specialist, Plaintiff became disabled on or about March 14, 2015, and has remained continuously disabled since that date due to serious medical conditions.

13.     Following the onset of her disability, Plaintiff filed a claim for long-term disability benefits under the relevant Policy which was administered by LINA.  LINA made every decision in Plaintiff's long-term disability claim, which was to deny it.

14.     Upon information and belief, the relevant LINA Policy and definitions of disability governing Plaintiff's long-term disability claim are as follows:

> "The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1.  Unable to perform the material duties of his or her Regular Occupation; and
> 2.  Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been paid for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1.  Unable to perform the material duties of any occupation for which he or she is, or may reasonable become, qualified based on education, training or experience; and
> 2.  Unable to earn 80% or more of his or her Indexed Earnings."

15.     In support of her claim for long-term disability benefits, Plaintiff submitted to LINA medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

16.     In a letter dated May 26, 2015, LINA informed Plaintiff it was denying her claim for long-term disability benefits.

17.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's May 26, 2015 denial of her claim and submitted additional medical, vocational and lay-witness evidence

supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy.

18.     Plaintiff submitted to LINA a December 11, 2015 narrative letter authored by her treating medical professional who opined, "…[Plaintiff] is unable to perform the types of tasks which would be asked of her in a normal job situation at this time."

19.     Plaintiff also submitted to LINA a December 11, 2015 medical questionnaire completed by her treating medical professional who confirmed she would miss work "more than three or four times per month" due to her medically determinable impairments, if she were employed in a full-time job.

20.     Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated November 14, 2015, who after interviewing Plaintiff and reviewing the aforementioned evidence, along with the "Regular Occupation" and "Any Occupation" definitions of disability set forth in the Policy concluded, "…[Plaintiff] is not able to work in any occupation and meets the 'own occupation and any occupation' definitions of disability in the Cigna policy."

21.     Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

22.     Plaintiff also submitted to LINA two (2) sworn affidavits authored by herself and her boyfriend, who both confirmed she is unable to work in any occupation and that her conditions had not improved in any meaningful way since the date she originally became disabled.

23.     LINA entered into the Regulatory Settlement Agreement ("RSA") with the Arizona Department of Insurance on June 11, 2013 (the RSA is attached as Exhibit "A" to

this Complaint).  Plaintiff reminded LINA of this agreement and its claim responsibilities by submitting a copy of the agreement to LINA during the administrative review of her long-term disability claim.

24.    The RSA resulted from a multistate examination of LINA's disability claims practices which led to regulatory concerns, a corrective action plan with regulatory monitoring of LINA by governmental agencies in LINA's evaluation of its disability claims, which includes similarly situated insureds such as the Plaintiff.

25.    As part of the RSA, LINA agreed to pay $925,000 in fines to the participating state regulatory agencies.

26.    As part of the RSA, LINA agreed to collectively pay 5 different states' regulatory agencies hundreds of thousands of dollars for claims monitoring.

27.    The terms of the RSA apply to Plaintiff's claim and the terms of the RSA are relevant in this action as it relates to whether LINA complied with those terms in its review of her claim.

28.    Plaintiff alleges that LINA's review of her long-term disability claim failed to fully comply with the terms of the RSA which precluded a full and fair review. Plaintiff is entitled to discovery with regard to LINA's efforts to comply with the terms of the RSA during its review and decision making in disability claims.

29.    As part of its review of Plaintiff's claim for long-term disability benefits, LINA obtained two (2) medical records only "paper reviews" of Plaintiff's claim from two physicians of its choosing, John Zincone, M.D. and John Knapp, M.D.

30.    Upon information and belief, Plaintiff asserts Drs. Zincone and Knapp may be long time medical consultants for LINA and/or the disability insurance industry.  As a result, Drs. Zincone and Knapp may have incentives to protect their own consulting

relationships with LINA and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that supported the denial of Plaintiff's claim.

31.     On April 13, 2016, Dr. Zincone reached out to Plaintiff's treating medical professional with written questions for her response.  Dr. Zincone did not provide Plaintiff's treating medical professional with a copy of his report with his April 13, 2016 correspondence.

32.     On May 9, 2016, Plaintiff's treating medical professional responded to each question asked of her by Dr. Zincone opining, "There is no projected date for her to return to work at this time…"

33.     In a letter dated June 1, 2016, LINA informed Plaintiff it was denying her claim for long-term disability benefits.

34.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed LINA's June 1, 2016 denial of her claim and submitted additional medical, vocational and lay-witness evidence supporting her appeal and her allegation that she is disabled and meets any definition of disability in the Policy.

35.     Plaintiff submitted to LINA an Independent Medical Examination report dated July 20, 2016, wherein after a physical examination of Plaintiff, an examining board certified rheumatologist concluded, "It is my opinion [Plaintiff] has been unable to work in any occupation since March 14, 2015 and this will remain the case indefinitely."

36.     Further supporting her claim, Plaintiff submitted a November 3, 2016 Addendum Vocational report from the same certified vocational expert who had interviewed her previously and authored the November 14, 2015 vocational report.  After

interviewing Plaintiff for a second time and reviewing the aforementioned evidence along with the "Regular Occupation" and "Any Occupation" definitions of disability set forth in the Policy, the vocational expert concluded it remained her vocational opinion, "…[Plaintiff] is disabled from all employment that may exist in the national economy."

37.    Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they have on her ability to work in any occupation or in any work environment.

38.    Plaintiff also submitted to LINA another sworn affidavit authored by herself confirming she remains unable to work in any occupation and that her conditions had not improved in any meaningful way since the date she originally became disabled.

39.    As part of its final review of Plaintiff's claim for long-term disability benefits, LINA obtained three (3) medical records only "paper reviews" of Plaintiff's claim from three (3) physicians of its choosing, Eric Chavez, M.D., Chalonda K. Hill, M.D. and Mark Burns, M.D.  LINA did not disclose the identity of the reviewing physicians or their reports until its January 24, 2017 final denial had been issued in Plaintiff's claim.

40.    Upon information and belief, Plaintiff asserts Drs. Chavez, Hill and Burns may be long time medical consultants for LINA and/or the disability insurance industry.  As a result, Drs. Chavez, Hill and Burns may have incentives to protect their own consulting relationships with LINA and/or the disability insurance industry by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that supported the denial of Plaintiff's claim.

41.    In letters dated November 23, 2016 and December 5, 2016, in order to engage LINA in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff

requested a complete copy of any and all medical records only "paper reviews" from LINA and the opportunity for her and her medical professionals to respond to the reviews prior to LINA rendering a final determination in her claim.

42. Prior to rendering its final denial in Plaintiff's claim, LINA unlawfully refused to honor Plaintiff's request and never shared with her or her treating medical professionals who opined she was disabled, the medical records only "paper reviews" authored by Drs. Chavez, Hill and Burns so they could respond to the reports and perfect Plaintiff's claim.

43. LINA's failure to provide Plaintiff and her treating medical professionals with the opportunity to respond to Drs. Chavez, Hill and Burns' reports is an ERISA procedural violation, and it precluded LINA from conducting a full and fair review pursuant to ERISA. LINA's actions also violated Ninth Circuit case law as the Court held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

> "The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, *another for the final denial*. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement*" (emphasis added).

44. In a letter dated January 24, 2017, notwithstanding Plaintiff's aforementioned evidence which proved she met both the "Regular Occupation" and "Any Occupation" definitions of disability in the Policy, LINA notified her it had denied her claim for long-term disability benefits.

45. In its denial letter dated January 24, 2017, LINA notified Plaintiff she had exhausted her administrative levels of review and that she could file a civil action lawsuit in federal court pursuant to ERISA.

46.     LINA's January 24, 2017 final denial letter is clear evidence that it violated the terms of the RSA, breached its fiduciary duty and failed to provide a full and fair review, while in the process of also committing ERISA procedural violations that were specifically enacted to protect individuals such as the Plaintiff.

47.     LINA's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved that she met all definitions of disability in the Policy, and failing to provide its medical reviewers' reports prior to issuing its final denial and during a time when it mattered.

48.     In evaluating Plaintiff's claim on appeal, LINA owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer it, "solely in [her] best interests and other participants" which it failed to do. [1]

49.     LINA failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal in order to prove that she is disabled as that term is defined in the Policy.  LINA's failure to investigate the claim and to engage in this dialogue, and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is evidence she did not receive a full and fair review.

50.    Plaintiff asserts LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, and the terms of the RSA, by failing to have Plaintiff's claim reviewed by truly independent medical professionals; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the Policy allowed for one, or a functional capacity evaluation, which raises legitimate questions about the thoroughness and accuracy of its review and denials; by failing to credit Plaintiff's reliable evidence; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all of her medical conditions and the work limitations set forth in her medical evidence as well as the impact the combination of these medical conditions and limitations have on her ability to work in any occupation; by failing to engage Plaintiff in a dialogue so she could respond to Drs. Chavez, Hill and Burns' reports by submitting the necessary evidence to perfect her claim so she could prove that she is "disabled" as that term is defined in the Policy, and by failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

51.    Plaintiff asserts a reason LINA provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles LINA undertook as the decision maker and the payor of benefits.  LINA's conflict of interest provided it with a financial incentive to deny Plaintiff's claim.

52.     LINA's conflict of interest manifested in that when it denied Plaintiff's claim, it saved a significant amount of money.

53.     Plaintiff is entitled to discovery regarding LINA's aforementioned conflicts of interest.  Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by LINA, who then retained a reviewing medical professional in Plaintiff's claim, and of *any* individual who reviewed her medical evidence or claim.

54.     The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation and/or RSA violation which may have impacted or influenced LINA's decision to deny her claim.

55.     With regard to whether Plaintiff meets the "Regular Occupation" and "Any Occupation" definitions of disability set forth in the Policy, the standard of review for the Court to apply is *de novo*, as the Policy was issued in the state of Michigan.  Through Administrative Code Rule 500.2202, Michigan banned discretionary clauses in disability policies on February 23, 2007, prior to the final denial in Plaintiff's claim.  The final denial in Plaintiff's claim was made on January 24, 2017, during the time the statute was in effect.

56.     In denying her claim, Plaintiff alleges LINA failed to provide a full and fair review pursuant to ERISA, and that its denial of her claim is a *de novo* wrong decision.

57.     If the Court concludes the Policy confers discretion and the standard of review is for abuse of discretion, Plaintiff alleges that LINA's decision which resulted from its unlawful ERISA violations as referenced herein, constitutes an abuse of discretion. Plaintiff also alleges that in denying her claim, LINA did not provide a full and fair review as required by law and its violations of ERISA are so flagrant they justify *de novo* review.

58.     As a direct result of LINA's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long-term disability benefits in addition to other potential non-disability employee benefits she may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.    Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

59.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

60.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for the losses she has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that the evidence in Plaintiff's claim is sufficient to prove she meets the "Regular Occupation" definition of disability set forth in the Plan and/or Policy, and that she is entitled to these disability benefits, and any other non-disability benefits as a result of that order, from the date she was first denied these benefits through the date of judgment with prejudgment interest thereon;

B.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as she meets the conditions for the termination of benefits;

C.      Assuming the issue is ripe before the Court, Plaintiff seeks an Order that the evidence in Plaintiff's claim is sufficient to prove she also meets the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy, and that she is entitled to these benefits through the date of judgment, with pre-judgment interest thereon;

D.      Assuming the Court issues an Order that Plaintiff meets the "Any Occupation" definition of disability in the Plan and/or Policy, Plaintiff seeks an Order directing Defendants to continue paying these disability benefits, and any other non-disability benefits as a result of that order, until such a time as she meets the conditions for the termination of these benefits;

E.      Alternatively, if the Court determines that Plaintiff meets the "Regular Occupation" definition of disability in the Plan and/or Policy for that entire timeframe, but the Court declines to make a determination as to whether Plaintiff meets the Plan and/or Policy's "Any Occupation" definition of disability, then Plaintiff seeks an Order remanding her claim to the Plan Administrator and/or Defendant so it can conduct an administrative review where she can submit new and additional evidence so the Plan Administrator can determine whether she meets the "Any Occupation" definition of disability;

F.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g), including for any Court ordered remand to the Plan Administrator and/or Defendants; and

G.      For such other and further relief as the Court deems just and proper.

DATED this 16th day of March, 2017.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff

-14-